Arlan Price
29027 Rio Grande River Drive
Spring, Texas 77386
(808) 633-8361

Plaintiff (appearing Pro Se)

IN THE UNITED STATES DISTRICT
COURT FOR GUAM

| | | |
|---|---|---|
| ARLAN PRICE, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. _____ |
| AMBYTH SHIPPING & TRADING, INC., and THE AMBYTH GROUP, | § § § § | JURY |
| Defendant. | § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

### INTRODUCTION

1. This is a Civil Action by Plaintiff Arlan Price (hereafter sometimes referred to as "*Plaintiff*" or "*Price*"), to recover damages arising from Defendants Ambyth Shipping & Trading, Inc. and Ambyth Group (hereafter sometimes referred to collectively as "*Ambyth*" or "*Defendants*") for violation of federal laws that prohibit discrimination and retaliation in employment.

### PARTIES

2. Plaintiff. Arlan Price is a citizen and resident of Texas. Mr. Price resides at 29027 Rio Grande River Road, Spring, Texas 77386.

3. **Defendants.** Ambyth Shipping & Trading Inc. ("ASTI") is a for-profit business with offices located at 1026 Cabras Highway, Suite 205, Piti, Guam 96915 and may be served by serving Manager Teresa Gotti.

The Ambyth Group is a for-profit business with offices located at 521 Ala Moana Boulevard, Room 207, Honolulu, Hawaii 96813 and may be served by serving Manager Conrad B. Divis, CAPT, USN (Ret.).

## JURISDICTION AND VENUE

4. **Personal Jurisdiction**. This Court can exercise jurisdiction over the Defendants as their actions are within this Territory. Furthermore, many of the specific acts complained of took place, in whole or in part, in Guam.

5. **Subject Matter Jurisdiction**. This Court can exercise subject matter jurisdiction under 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §1331. Specifically, Plaintiff's claims against the Defendant for violating the laws prohibiting discrimination and retaliation in employment arise under 42 U.S.C. §2000e *et seq*. Thus, the claims at issue present a federal question.

All conditions precedent for filing this matter have already occurred. Specifically, Plaintiff has already exhausted his administrative remedies in this claim by filing a charge of discrimination with the Equal Employment Opportunity Commission on or about October 4, 2012 (he later amended his charge on February 8, 2013). In his charge, Price asserted that he had been subject to sex discrimination in the form of a hostile work environment based on his sex and sex stereotypes and that his discharge from employment was motivated by retaliation for engaging in protected activity, and/or discrimination because of his sex, his association/relationship to someone with a disability, and/or his caregiver status.

The EEOC issued a letter of determination on or about April 13, 2015, indicating that its investigation revealed that there was sufficient evidence regarding Plaintiff's claims that he had been subject to a hostile work environment based on sex stereotypes and terminated in retaliation for engaging in protected activity. Thus, the EEOC found that there was sufficient evidence to support Price's claims that Defendants had violated Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Americans with Disabilities Act of 1990, as amended ("ADA"). The Commission made no finding as whether Price was discharged due to his association/relationship to someone with a disability and/or his caregiver status. The Commission attempted to conciliate this matter between Plaintiff and Defendants. However, Defendants were unwilling to attempt to participate in such resolution efforts. Accordingly, the EEOC's Honolulu Office issued a Right to Sue letter on May 28, 2015.

6. **Venue**. Venue is appropriate in this district because the acts complained of occurred, in whole or in part, within this district.

## FACTS

Background Facts

7. Price was a resident of Honolulu, Hawaii when in the Spring of 2012, Defendants recruited Price for a position as the Operations Manager, Ship Agency, with ASTI.

8. After interviewing with Andrew J. Miller, ASTI's Chief Operating Officer, in Honolulu, Price received an offer of employment dated April 26, 2012.

9. This offer of employment was contingent upon Price passing a pre-employment Department of Transportation ("DOT") standard drug test that was arranged by Defendants at a facility approved by Defendants in Honolulu.

3

10. Price took and passed the DOT drug test in Hawaii. He subsequently began his employment with Defendants on or about May 14, 2012. As required, he reported on his first day at Defendants' office at the Port Authority of Guam Administration Building.

Discriminatory Treatment

11. In his role as Operations Manager, Ship Agency, Price was under the general direction of Teresa Gotti, Defendants' Manager, Ship Agency and Marine Services ("Gotti"). Upon information and belief, Price was the first male to hold this position under Gotti's direction.

12. From the start, Gotti subjected Price to unwelcome intimidation, comments, ridicule, insults, and berating regarding his appearance and hygiene, as she told him that she did believe that Price presented himself appropriately for a man, including, but not limited to, the length of his fingernails. Her remarks belittled Price's manhood.

13. Despite the barrage of hostile treatment to which he was subjected by his immediate supervisor, Price conducted himself professionally at the work place and received consistent compliments from Defendants' customers regarding his performance in assisting with shipping issues bringing vessels into port.

14. In early June 2012, Price's adult son, who was living in Houston, Texas, informed Price that he was in need of medical care as he had tested positive for HIV.

15. Given the severity of his son's health situation, Price wished to be with his son during his visits with his doctors in Houston. Price sought to schedule his travel during the upcoming week of the Fourth of July so that he would be away during a holiday week.

16. On June 11, 2012, before the start of the regularly scheduled Monday morning staff meeting, Price asked Miller if he could meet with him separately after the staff meeting.

4

17. Price asked to meet with Miller alone because Miller had been the person who had interviewed and hired him. In addition, Price realized that, considering how Gotti had already been treating him, if he disclosed the fact that his son was HIV positive to her, she would likely use such information to further berate and insult him. However, though Price had wanted to meet just with Miller, Miller asked Gotti to also attend the private meeting.

18. In the private meeting, Price disclosed to both Miller and Gotti that his son was HIV positive and that he was requesting a week off to travel to Houston to attend his son's doctors' visits with him. He also explained that he was asking for the July 4th week in order to not be a full week without pay and to minimize the number of business days that he would not be present.

19. Miller consented to Price's request and instructed Gotti to provide Price with the necessary paperwork to take the time off along the terms requested. Price submitted his original written request on or about June 13, 2012 to Gotti for her signature.

20. Having received no response from Gotti for several days, on or about June 18th, Price asked Gotti if she had signed off on his request. Gotti told Price that she had not and that she had problems with his request to be off on July 2nd, 3rd, 5th, and 6th because she did not believe that he should be eligible for the 4th of July holiday. Price reminded Gotti that Miller had already consented to his request.

21. During the week of June 18th, Gotti continued to question whether Price could receive holiday pay for the 4th of July, despite Miller's approval of such. She raises such questions in the Human Resources office, which was an open office space that allowed others to hear the conversation, and required the Human Resources representative who was present that week to contact the corporate office in Harmon.

22. Furthermore. Gotti berated Price for his son being gay and made insulting and offensive statements to Price "blaming" Price for his son being gay, claiming that Price's son must have "learned" this behavior from Price, despite the fact that Price is heterosexual. In addition, Gotti pressed Price to forego his trip rather than care for his son by telling him that work should take a higher priority and that this was just a sacrifice that needed to be made.

23. Gotti's badgering and harassment was so bad that Price withdrew his original request for time off.

24. Price later resubmitted his request on or about June 22, 2012 to seek to have the entire 4th of July week off and was eventually allowed to take the time off.

25. However, days before Price was to take his leave to be with his son in Houston, Gotti issued Price an overall below expectations performance review on June 29, 2012, despite the fact that customer evaluations of Price's performance were consistently meet and above expectations.

26. Moreover, after Price returned from his trip to be with his son in Houston during his son's doctors' visits, Gotti continued to ridicule and insult Price regarding Price's physical appearance and manhood; his son's homosexuality; his son's status of being HIV positive; and the need for him to have to take off to be with his son during his health crisis. Gotti also questioned Price's sexual orientation.

27. Gotti's treatment of him reached such a level that Price felt that he must seek management support. On or about Friday, July 27, 2012, Price visited with Vanessa Cruz, Defendants' Human Resources Manager on Guam. Before submitting his complaint, Price asked Cruz whether his complaint would be kept confidential; Cruz assured him that it would.

28. After Price told Cruz about his complaint about Gotti's unlawful discrimination, harassment, and retaliation of him, Cruz told Price that he would likely lose because he was choosing to oppose Gotti.

29. On Monday, July 30, 2012, Price was notified that his employment with Defendants was terminated. Miller told Price that he had investigated Price's complaint and found his allegations were unfounded.

30. As a result of the actions described above, Price suffered damages, including, but not limited to, loss pay, loss compensation, mental anguish and emotional distress.

## CAUSES OF ACTION

<u>Violations of Title VII (Sex)</u>

31. Plaintiff incorporates the allegations made in the above paragraphs as if fully set forth herein.

32. As described above, Defendants discriminated against Plaintiff with respect to his compensation, terms, conditions and/or privileges of employment, and by terminating his employment because of his sex and because of sex stereotyping.

33. Furthermore, Defendants engaged in an unlawful employment practice by subjecting Plaintiff to a hostile work environment due to his sex and because of sex stereotyping.

34. Furthermore, Defendants engaged in an unlawful employment practice by allowing Plaintiff's sex to be a motivating factor for their unlawful treatment of him, including, but not limited to their termination of his employment.

35. Defendants engaged in the discrimination and/or the unlawful employment practices described above with malice or with reckless indifference to the federally protected rights of Plaintiff.

Violations of Title VII (Retaliation)

36. Plaintiff incorporates the allegations made in the above paragraphs as if fully set forth herein.

37. As described above, Defendants retaliated against Plaintiff with respect to his compensation, terms, conditions, and/or privileges of employment and by terminating his employment because he engaged in activity protected by Title VII, including but not limited to, opposing discriminatory and retaliatory employment practices and treatment.

38. Furthermore, Defendants engaged in an unlawful employment practice by allowing Plaintiff's engagement in activity protected by Title VII to be a motivating factor for their unlawful treatment of him, including, but not limited to their termination of his employment.

39. Defendants engaged in the unlawful retaliation described above with malice or with reckless indifference to the federally protected rights of Plaintiff.

Violations of the ADA

40. Plaintiff incorporates the allegations made in the above paragraphs as if fully set forth herein.

41. As described above, Defendants discriminated against Plaintiff with respect to his compensation, terms, conditions and/or privileges of employment, and by terminating his employment because of his association/relationship with someone with a disability, namely his son who is HIV positive and/or his caregiver status of someone with a disability.

42. Furthermore, Defendants engaged in an unlawful employment practice by subjecting Plaintiff to a hostile work environment due to association/relationship with someone

8

with a disability, namely his son who is HIV positive and/or his caregiver status of someone with a disability.

43. Furthermore, Defendants engaged in an unlawful employment practice by allowing Plaintiff's association/relationship with someone with a disability, namely his son who is HIV positive and/or his caregiver status of someone with a disability to be a motivating factor for their unlawful treatment of him, including, but not limited to their termination of his employment.

44. Defendants engaged in the discrimination and/or the unlawful employment practices described above with malice or with reckless indifference to the federally protected rights of Plaintiff.

Violations of ADA (Retaliation)

45. Plaintiff incorporates the allegations made in the above paragraphs as if fully set forth herein.

46. As described above, Defendants retaliated against Plaintiff with respect to his compensation, terms, conditions, and/or privileges of employment and by terminating his employment because he engaged in activity protected by the ADA, including but not limited to, opposing discriminatory and retaliatory employment practices and treatment because of his association/relationship with someone with a disability, namely his son who is HIV positive and/or his caregiver status of someone with a disability.

47. Furthermore, Defendants engaged in an unlawful employment practice by allowing Plaintiff's engagement in activity protected by the ADA to be a motivating factor for their unlawful treatment of him, including, but not limited to their termination of his employment.

9

48. Defendants engaged in the unlawful retaliation described above with malice or with reckless indifference to the federally protected rights of Plaintiff.

## JURY DEMAND

49. Plaintiff respectfully requests that this matter be tried before a jury.

## PRAYER

50. Plaintiff Arlan Price respectfully prays that Defendants Ambyth Shipping and Trade, Inc. and the Ambyth Group be cited to appear and answer herein and that upon a final hearing of the cause, that judgment be entered for Mr. Price against Defendants and that Plaintiff be awarded the following:

    A. Back pay;

    B. Compensatory damages;

    C. Front pay;

    D. Punitive and/or exemplary damages;

    E. Reasonable attorneys' fees and expenses;

    F. Pre-judgment interest;

    G. Post-judgment interest;

51. Plaintiff further requests all other relief to which he is justly entitled, whether in law or in equity.

Respectfully submitted,

_____
Arlan Price
29027 Rio Grande River Drive
Spring, Texas 77386
(808) 633-8361

Plaintiff (appearing Pro Se)

10